May it please the Court, my name is Keith Canuck and I'm here on behalf of Arden and Chris Morley. There's two basic issues before the Court today. The one is based upon the motion to dismiss. The other is based on the motion for summary judgment. With respect to the motion to dismiss issue, the issue is whether the allegations of malice and punitive damages in the first amended complaint were sufficient to provide notice that plaintiffs alleged that defendant had no conditional privilege. And with respect to that issue, our position is that since the conditional privilege is dependent upon good faith and lack of malice, that the allegations, the very direct and specific allegations in the first amended complaint that there was a basis for punitive damages based upon willful, wanton, extreme, outrageous and malicious conduct would certainly satisfy at least at the pleading stage a basis that the conditional privilege would not apply. Why do you suggest in your opening brief that the Alessios published defamatory statements to non-members of the TICI, TICA, or that they posted defamatory remarks on the Internet? Well, that was attached to the affidavit of Arden Morley, which was attached to the first amended complaint. And what I'm suggesting is you've got to raise it in your opening brief in front of me, and I didn't see it, so I wondered if you might look and find it if there is such an argument. The question is, is there in your opening brief any suggestion where the Alessios published defamatory statements to non-members of the TICA or that they posted defamatory remarks on the Internet? I didn't see that in your opening brief. In fact, I don't find any evidence to support the allegation that anyone sent these e-mails to members, non-members of the TICA. Well, that's not only that it's not in your opening brief, I don't find it in the record. Well, it was in the first amended complaint, which is part of the record. It was also discussed at some length in Judge Carroll's order, which was filed as item number 27. Didn't your client concede that she didn't even know who was in the TICA and who isn't? No, she didn't. Well, what she said was, and this is referenced in her affidavit attached to the motion to dismiss. It's also referenced in Judge Carroll's order, item 27, that it was published on public Internet on two lists, one the Simba list and one the Savannah Cat list, which were public Internet e-lists. Now, perhaps the affidavit could have gone on to specify and, therefore, was published to members outside the TICA organization. But it's the clear, I think that it is clear from that, that it was published on public Internet lists to members of two cat organizations that are separate and distinct from TICA, that, therefore, the necessary inference would be that it was published outside of TICA. I'm confused about where we are. You started out talking about the 12B6 issue. This is not the 12B6 issue? No. In other words, the motion is dismissed because we're now talking about the record and we're not talking about the probate's question. I was responding to you. I know, but I'm trying. All right. Sorry. All right. Do you want to go back? No, that's okay. I'm just trying to orient myself. Well, my worry is that on the motion to dismiss, what was dismissed, as I understand it, was all of the allegations relating, if you will, to the defamation claims, correct? And the defamation per se, those two. And, therefore, it seems to me that on the motion to dismiss, one has to suggest in his opening brief that the Alicios, who are the defendants here, published defamatory statements to nonmembers and posted defamatory remarks on the Internet in the opening brief or one doesn't get a chance to argue it. Well, I believe that it was raised in the opening. I couldn't find it. Maybe you can reference that for me. Items B comes at page 10. And under item B, I'll look at it, where we argue that the qualified privilege was reversible error based upon the clear language of the complaint. And I think in addition, the Court erroneously ruled on a question of fact and the question of fact. But that's a different problem. You see, that's why I was having orientation problems, because the question of who they published it to is one matter. And if you haven't argued that, then you may be and the question of whether assuming that you published it only to members, whether it was, it met the standards of the qualified privilege is another matter, right? They're two different things. Yes. Okay. And then with respect to that issue ---- The pages you just referred us to deal with question 2. I don't see that they deal with question 1. Which is what is question 1 again, Your Honor? I'm sorry. Question 1 is, was this published outside the membership? There's references that it was published outside. Where? And it's in Arden-Morley's affidavit attached to the motion to dismiss. But that's not ---- And it's also not in the opening brief. Pardon? That's not in the opening brief. That's what my colleague has suggested. The things you're talking about is the factual matters as it relates to inside the TICA, not outside. Your arguments all in the opening brief go to inside the TICA, not outside. I believe there's ---- And, again, I wasn't anticipating this question, so I apologize. But I have a 15-page document there, and I guess I'd have to supplement in writing. But I believe that it was stated in the opening brief that the allegations were, and this is in her affidavit, two places. In her affidavit attached to the motion to dismiss, and, again, in her affidavit attached to the motion for summary judgment, it was published outside the list. Outside the organization. This is all that part of your brief you refer to says. The Court did not consider the factual claims made by the plaintiffs as included in the complaint. Well, there isn't ---- there's really not much in the command. And then it says, or, in the appellant's declaration including the response to the motion to dismiss, well, you know, that's not a matter that can be considered on a motion to dismiss, the declaration submitted in opposition to motion to dismiss. He did, though. He did consider the affidavits. No, what you're saying is something in there, something in there that makes your case. But you can't depend on that, because that's not a proper, you know, that's not properly something to be considered in whether or not the complaint should be dismissed. Well. But what in the complaint, what in the complaint, in answer to Judge Smith's question, what in the complaint shows that these communications were sent outside of the TICA membership? Oh, well. What? Show me what? I don't see anything in there. It just really says third person. It says paragraph 20 of the complaint say the false statements have been published to third persons and or entities. Oh, and it didn't say who they are. It just says third persons. Third persons means somebody other than the plaintiff and the defendant. Right? Well, and then there was her affidavit which said they were brought up. No, you can't consider the affidavit on the motion to dismiss. But he did reach it. And where is that? He reached it in his order, which is attached at item number 27. There's a long discussion, and what he said was that it wasn't published. He reached the affidavit, so he considered on the motion to dismiss. What he really did was he converted it to a motion for summary judgment. Where are we? Where are we? We're talking about Judge Carroll's order. No, no, no. Show me in his order. What page am I on? Yeah. Just one moment. Well, the order is number — item number 27. Right. I know. It's somewhere around page — And then he quotes at the top of page 13, Defendants in this case were involved in the mass distribution of e-mail to individuals listed as Savannah breeders on the TICA's website. And the Savannah breeders aren't necessarily limited to Savannah breeders who are members of TICA. They're just Savannah breeders. And then one second. 13. Well, it's the 13th. I remember. Oh, I see. I see. Over at page 16, so I'm — Your Honor, it's page 13 at the top. That's where you get the defamatory e-mail. Okay. And then page 16 at the bottom and page 17 at the top, he finds that these were — the Court found the conditional privilege arguments persuasive. Defendants e-mailed to members of TICA, expressed their concern that a member of the association was acting dishonestly by making misrepresentations. All right. So there's nowhere that he talks about any allegation that it was sent outside the membership. Well, yes, but the affidavit of Arden-Morley, which was attached to the motion to dismiss — Let's get beyond this now. What about the privilege question? What question? What about the — assuming that it was not published outside the membership, what about within the membership? What is there in the complaint that would satisfy the conditional privilege? Well, the complaint focused not just on whether there was something wrong with the lineage of the Katz and whether they were entitled to registration or not, as it said that she had engaged in fraudulent practices that reflected on her honesty and her integrity. And this was based upon — and at the time that they made these allegations, the registrations to which they objected in 1999 had already been amended, and they were satisfied with the amended registrations. So they filed this complaint saying she's a fraud and she's dishonest. The amended registrations would have superseded the original registrations. The registrations that were standing as the current registrations at TICA at the time they filed this complaint had been amended in the — Fine. All right. Tell me what in the — Pardon. I'm sorry. What is your understanding of what you would have to show to meet the conditional privilege with regard to members of the organization? What would you have to demonstrate? Well, there's a conditional privilege as long as there's no malice, as long as there's no — But what malice are we talking about? What's malice? Is it New York Times-type malice, i.e. no — Yes, that's my understanding. All right. Is there an allegation in the complaint that encompasses that? Yes, there most definitely is. Okay. It is at — That doesn't — Items 22 — That isn't preempted by the — that isn't preempted by the qualified privilege is what we're really talking about, which you're going to have to come up with something which is totally malicious, as I understand the privilege. But just to answer — Okay. No, I don't mean to ignore your question, but just to answer them briefly in sequence, paragraph 22 of the complaint, paragraph 32 of the complaint clearly allege that the actions were oppressive, malicious, wanton, and with total disregard for the rights of plaintiff. As a result, plaintiff is entitled to punitive and exemplary damages. Now, Judge Carroll found that that allegation was not sufficient to negate conditional privilege. It clearly is. It couldn't — it alleges bad faith, malice, wanton. If the standard is malice, there's an allegation of malice. So that clearly negates the — the conditional privilege as a matter of the pleadings. Then he went on, although he didn't tell anybody this before he entered his ruling, he went on to consider the affidavits. And what he said is, there's no indication here that this was ever published outside the organization. Well, my understanding of the rule of pleadings is that paragraph 20, where we allege that the false statement had been published to third parties or entities. Yeah. Just a minute. Just help me for a minute. Where does he say that? Where does the judge say that there's no allegation that it was published outside? I'm assuming that. He says it on the last page of Judge Carroll's order. At pages 16 and 17, because his conclusion is that the e-mail was to members of TICA. That is not factually accurate. Arden Morley's affidavit said it was put on public lists, on the Internet, to a SIMBA organization, and there was another name of another CAT organization. There would be no way — No, it said the SIMBA list. Yeah, but there's no way that — Isn't that a list of the TICA organization? No. There's nothing in the record that shows that. He couldn't possibly know that based on the record. The clear inference is that the two lists were not limited to members of the organization. That's what Arden says in her affidavit. He made the assumption that they were both limited to members of the organization. There's nothing in the record that tells him that. The clear inference from her affidavit would be that they were not so limited. And so it was just a factual mistake. If he wants to say that the e-mail was to only members of TICA, and his — then the affidavit would have had to have said that it was only members of TICA. Or he could have asked for clarification before he ruled and said, are you saying that these two lists are TICA-only lists or are they other lists, and then she would have said they're not. But there's no way for this Court or for Judge Carroll to have concluded those two say that. And there's no way to conclude that the allegation, the complaint that was published to third parties or entities was limited to TICA because that doesn't say that either. Now, maybe the complaint could have said third parties and entities outside of TICA, but I don't think it needed to say that. I think it provided notice that it speaks in the plural that it was to third persons or entities, not necessarily limited to TICA. So I guess that he thought this was — well, I shouldn't say that. I mean, you could construe this as some silly case about Cass and kind of sweep past it, but if you start looking carefully, there was no basis to have dismissed the defamation, defamation per se counts, based on what he actually had in front of him. Kagan. Thank you very much. We'll give you a little time to rebut. Thank you, Your Honor. May it please the Court. Kali Eman for Appellees Christine and Steve Alicio. There are two rulings at issue here today. The first is the 12b-6 ruling that the Court was just discussing. The only matters that can be considered by the district court, of course, in ruling on that motion to dismiss is the pleading itself, not a declaration from the client, from a party, the pleading itself. The Court gave the plaintiff the benefit of the doubt, and while that — we didn't dispute that, of course, because at the end of the day the ruling was in our favor. But it's the pleadings alone that need to be examined for that ruling. There is not sufficient allegation to get around the conditional privilege. It is clear in the — Well, but the complaint, though, doesn't allege in so many words that the statement was made only to members of PICA, does it? Well, paragraph 14 does state that the complaint was filed within the organization. Wait a minute. Paragraph 14 says what? Paragraph 14 of the complaint — Yeah. It says that defendants have recently engaged in a campaign to — Okay. Go ahead. Okay. In a campaign to discredit plaintiff and have plaintiff forced out of PICA and have filed a defamatory complaint against her within that organization alleging — Paragraph which one? Fourteen. Fourteen. Well, you're going to mean 15, I think. Oh, I see. You're going to mean 15. All right. I have 14. No. Well, you're probably looking at an earlier complaint and have forced out and have — Well, but that's not the limit. If you look at the first cause of action, it says in paragraph 20, defendants' false statements have been published to third persons and or entities. Right? Now, you could read that if you read it in favor of the plaintiff as being persons outside of PICA. Isn't that the natural reading? But it doesn't say that. No, but it doesn't say it's only the PICA, does it? It does not. No. Yeah. Well, where does the Court's conclusion that it's published only to PICA come from? That's what I want to know. Well, the burden's on plaintiff to make that allegation when there is — Say what allegation? To make the allegation — No, the burden's on you because it's a defense. It's a conditional privilege of defense. So it's your burden to show, and I don't see how you can show it on a motion to dismiss. How did you show it on this motion that it was published only to PICA? Because the complaint states that the underlying complaint, that is, the issue of this lawsuit and the statements that were made, were within the context of PICA. It says that — Let me ask you — No, but it doesn't necessarily mean it's, you know, the e-mails went only to members of PICA. It says defendants' false statements have been published to third persons. So from that — The complaint — From that, how do you meet your burden that it was published only to members of PICA? Because the complaint itself states that this was within PICA. This was an — I mean, that's construing the complaint, you know, against the plaintiff, which you don't do on a motion to dismiss. The complaint was — You have to admit that this general allegation is capable of being understood as, you know, third persons as including persons outside of PICA. Which not in and of itself is excessive publication. So it's not — there isn't a conclusion to be drawn from that, that that's excessive publication. Well, if you can't draw a conclusion either way, then you lose, because, you know, as you're asserting an affirmative defense, you have the burden. The complaint was clear on its face, and in fact — Well, you just said it wasn't. You just said you can't draw a conclusion from this. The complaint is clear on its face that this was an intraorganizational dispute between the defendants who are all parties to TICA. And plaintiff made that clear in her declaration, which is outside of the pleadings, but you can't have it both ways. So — All right. Let me ask you a question. Go ahead. I'm sorry. Well, first of all, this paragraph, which in our complaint is 15, says that the defendants have recently engaged in a campaign to discredit plaintiffs and have plaintiffs forced out of TICA and have filed a defamatory complaint against you within an organization. So that's in the — it's conjunctive, and therefore, again, the campaign could have been something else. We don't know. But secondly, so I don't see, again, why that negates publication outside. Because it says plaintiff — plaintiff — I'm sorry, defendants have recently engaged in a campaign to discredit plaintiffs and have plaintiffs forced out of TICA and have filed a defamatory complaint against her within that organization. So the last part is within the organization, but the first part is not necessarily.  But you go beyond that. If you go one, two, three paragraphs beyond that, it says these defendants have made false statements regarding the plaintiffs. Right? And each of them has made representations and so forth about Savannah Katz and misrepresented so-and-so. And then, you know, these false statements have been published to third persons. That's the allegation. How is that limited to, you know, an intra-TICA communication? You can only do that if you construe it most favorably to the defendant. Well, based on the complaint and the interorganizational dispute — That might be one way to construe the complaint. But it's not the only way. It's not the only rational construction of the complaint. And on these kinds of motions, you know, the — I mean, just Hornbook law, you construe it in favor of the plaintiff. Right? Which you're not — obviously not doing. So my question is, again, where did Judge Carroll, you know, get the — get the idea that the false statement was published only to members of TICA? It doesn't say that in so many words in the complaint. Understood. And plaintiff made that statement herself. You're talking about — now, you're talking about the declaration? Well, yes, and then later on in the record, of course, for summary judgment. But more generally — well, first of all, I want to ask you questions about the malice allegation. I mean, again, there's an allegation. It's not in the right context, but there's an allegation that the actions were oppressive, malicious, wanton, and with total disregard for the rights of the plaintiff. Why wouldn't that encompass the qualified privilege standard? It's a — it's a conclusory allegation. Of course it's a conclusory allegation. And we also — I mean, and we sanction those kinds of pleadings. And if they — but it's using the right word, malice. I understand malice means different things in different places, and you could have fleshed that out as time goes on. But it's there. And also total disregard for the rights of the plaintiff seems pretty close to without regard to whether it's true or false. Throwing the word malice in to support punitive damages is not enough to allege defamation? Right. But more generally, and the reason we're having this problem — I guess I have two questions. The reason we're having this problem is because this is all an affirmative defense. So how can you do it in the pleadings at all? I mean, did you file an answer with the affirmative defense? With the privilege affirmative defense. And you filed an answer with that — with that? Yes. And did he have a chance to amend his complaint in response to that? They did not. Did not have a chance? They did not do it. They did not ask to? Yeah. All right. So essentially, you're — we're looking at this in light of your pleadings, but at least at the time this was filed, he could have not raised the qualified privilege for all he knew. So the real problem is why didn't he seek to amend his complaint, which he could have, I suppose. Yes. Yes. All right. Now, my next question is this. The trade libel issue did go to summary judgment. Is that right? Correct. Now, was all of this fleshed out on the facts, these particular problems in the context of the trade libel, which I assume it would be? In other words, was both the publication issue and the malice or the qualified immunity defense fleshed out in the trade libel context, or was it assumed in the trade libel context that this didn't apply for some reason, or what? I didn't want to jump ahead to the summary judgment, but, yes, it was fleshed out completely in the trade libel context. And it was litigated. The all of the evidence was adduced. A deposition was taken of Ms. Morley, asking pointed questions about the conditional privilege. It was ---- So there would be essentially no point in going back to this now, because the exact same facts have already been determined, been gone over in summary judgment, and we can simply assume those are the same facts that apply to this, because the issues are the same. It's ---- absolutely. It's whether the statement was false and defamatory and whether or not there was malice. And those issues ---- And what about the publication issue? Publication as well. That was discussed. There's no evidence in the record that my client's statements went beyond TICA. In fact, she submitted a declaration saying the only people who received her e-mail or her declaration were TICA members. And Ms. Morley testified she doesn't even know who is or is not a TICA member. What are you suggesting? Are you suggesting that on the basis of the summary judgment ruling, if the district court made any error on the motion to dismiss, it now has to be considered harmless? Yes. Because, you know, the result is foreordained anyway? Yes. It is harmless error because the issue was entirely fleshed out with trade libel at summary judgment, and again on these appellate briefs. And the evidence was adduced and plaintiffs submitted no evidence of a false statement. And in fact, she testified at deposition that the cat registrations were inaccurate. There was no false statement by my client or, for that matter, any. That was not an issue on the motion to dismiss was the falsity, which I assume is another defense, or maybe it's the burden of the plaintiff to show falsity. It was not addressed at the pleading stage. It was fully addressed at the summary judgment stage. And as I said, plaintiff testified at deposition. She admitted that the cat registrations were inaccurate. There was no statement by my client that was false, that was. So the statements that were the subject of the defamation claim are the same statements that were the subject of the trade libel claim. Yes. The exact same. There's nothing they weren't different incidents or different publications. They were the exact same publications. One was an e-mail. The second was a declaration in support of the underlying TICA complaint. Those were that was the universe of statements by my client. And in fact, nothing in those statements actually says that plaintiff was lying or cheating or submitted false registration. She just said, I have concerns. And in fact, she said, you know, I don't want to go after one of my own, but I firmly believe that the integrity of the breed is at stake. So there was no false statement. There was no intent. It was all addressed at summary judgment. Any error at the 12b6 stage would have been harmless if there was one at all. Does the Court have any further questions? No. Thank you very much. Counsel. Well, Mr. Kanaka, before you, whatever else you're going to start on, what about replying to this argument that, well, this is all taken care of in summary judgment motion, because, one, the statements weren't false, and, two, they weren't published outside the organization. What's your response to that? The record shows that the TICA complaint was dismissed against her, and the statements that were being relied upon were amended, so they weren't even her statements. There was an amended registration. What does that mean? Are you saying that the statements that are subject to the defamation claim are different from the statements that were at issue on the summary judgment? Well, what had happened was that when she initially registered the cats back in 1999, this was a new breed, TICA didn't have standards.  She thought that a 96 percent serval could be registered as a pure serval. She registered that way. Later, they came out with standards for the breed a couple years later because this is a new breed. No, but the point is, the point is that she didn't contest. She didn't contest that there were no false statements. And then she amended it to clarify that it was not a serval. All right. Let's start with the structural question, all right? Is there any difference between the issues that were decided as part of the trade libel as to either truth or falsity, publication or conditional privilege, and what would have been decided in the defamation if it had gone to summary judgment? Is there any difference? Well, with respect to the issue, there could have been. We never had a chance to do discovery on the defamation. What's the difference? That's what I want to say. It's the same statements, the same privileges and the same publication. Is there any difference? Well, we don't exactly know because they were put on the two public lists. You don't know what? We weren't able to do discovery on that issue. But what she said in her affidavit, both affidavits. Wait a minute. But I'm asking a prior question. What is the trade libel allegation? Is it essentially the same as the defamation allegation? Well, no, I don't think so because the trade libel allegation would be limited to how it damaged her business, how it prevented her from having sales. I understand that. Yeah, but the cause of action on trade libel just incorporated the same allegations on the defamation, right? So it has to be exactly the same. No. You made exactly the same claim. No, because my understanding was the allegations of trade libel was it caused the loss of specific sales as a result of misrepresentations of specific people. Well, that's the damage resulting. It's not what the libel was. Whereas on the def – I don't mean to talk over you, but on the defamation, defamation per se, it caused – there's an allegation in the First Amendment complaint, it caused a general loss of reputation. Well, that's the loss. That's not what the defamation was. That's the loss it caused. That's the damage question. It's not whether or not it's a different statement. Well, the – this – If you look at – if you look at your complaint, right, on the trade libel, you know, it's very short. It incorporates the same allegations that are in the defamation claim. So how can the claim be different in terms of, you know, what the libel was? Well, because those statements that did not damage her business causing a specific loss of revenue would not be – would not be encompassed within the trade libel claim. The trade libel claim is limited to those that hurt her business. The defamation, defamation per se, would hurt her general reputation. So they would be even more narrow. Pardon? So the trade libel claims would be even more narrow than the general defamation claims. They could be. Well, that means then they're encompassing the defamation claim. Because they're – you know, they're a smaller subset of the defamation claim, because it's only those parts of the defamation claim that cause, you know, commercial harm. But in fact, in terms of the actual statements that were litigated in the summary judgment? Yes. Were they any different than the ones that were encompassed in the defamation? Was the distribution any different? Was there any reason to think anything was different actually? Between the trade libel and the general defamation. We're talking about what she said, the statements. That's what she said. They weren't any different statements, were they? Well, only in the sense that the statements that would be relied upon for the defamation would be statements that she was a fraud, that she lacked integrity, and she was dishonest. The statements that might have been relied upon with respect to the trade libel would deal with the quality and lineage of her cats and whether they could be registered. So I don't think they're exactly identical, because the defamatory and defamatory per se statements raise general questions of her honesty and veracity, whereas the statements with respect to trade libel would be more limited to whether her cats were properly registered and whether we're getting the sound investment. If we go back to the record, we could find out what statements in fact were presented in the trade libel claim. That's true. And they were more – and what were they? Do we know what they were? What did you litigate? What did you come forward with? Well, the statements of the trade libel would have been that the cats were not properly registered. They would have been. They were whatever they were. You must have come forward with some particular statements. The statements were that the cats were fraudulent. That sounds a lot like – And that they weren't properly registered and, therefore, that they weren't pedigree cats. And that's – That's different. And the judge concluded that that was not false and that they were conditionally privileged and that they weren't published outside of the – Right. What transpired was the complaint was dismissed, and what was overlooked, of course, was the registrations had been amended when the complaint was filed and she wasn't even claiming that the original registration was accurate. And she hadn't been claiming that for four years at the time that they started this campaign to discredit her, whereas the statements that were relied upon for the defamation were more general in nature that she was a crook as opposed to her cats were no good. That's the difference between the two, I guess. Okay. Well, I'll give you time. Thank you very much. Thank both of you for an interesting argument. And we – the case is submitted and we are in recess. Thank you very much.
judges: Tashima, Berzon, Smith